Thomas A. Aurelio, J.
In this article 79 (Civ. Prac. Act) proceeding for the judicial settlement of its account as trustee, petitioner also asks for a construction of the agreement of trust, dated November 14,1932, as amended, and a determination as to the proper allocation between principal and income of certain distributions of shares of stock to the trust (or the proceeds of sale thereof in the case of shares sold by it) during the accounting period, within the meaning of paragraph ‘ seventh ’ ’ of said agreement. That paragraph reads as follows: seventh : All dividends payable in the stock of the corporation or association authorizing or declaring them, dividends payable in the stock of a corporation or association other than the one authorizing or declaring them and extraordinary cash dividends which shall be received by the Trustee hereunder shall be considered by it as wholly income. Any regular or ordinary cash dividend received by the Trustee hereunder on stock held in the trust shall be considered by the Trustee as wholly income notwithstanding the fact that such cash dividend is, either wholly or in part, in the nature of a payment on partial liquidation or represents, either wholly or in part, a distribution of assets of the company or corporation other than surplus earnings.”
At issue here only are whether certain distributions of stock by Standard Oil Company of New Jersey to the extent of 66% shares of its capital stock out of 400 shares received by the trustee in 1951 and 419-4/100 shares of its capital stock out of 800 shares received in 1956 as well as 133% shares of the common stock of the Procter & Gamble Company out of 200 shares received by the trustee in 1956 constitute principal payable to the remainderman or income distributable to the widower life beneficiary. The remainderman does not claim the proceeds of sale of the shares of capital stock of Consolidated Natural Gas Company received by the trustee in 1943 and in 1954, nor the proceeds of sale of the shares of common stock of Northern Illinois Gas Company received in 1954 and 1955. Likewise, the income beneficiary does not claim the shares of Standard Oil Company of New Jersey and of the Procter & Gamble Company except those above mentioned.
The question to be determined here is to what extent certain distributions constitute a stock dividend distributable to the income beneficiary, and to what extent the distributions are *687 merely stock splits and thus allocable to the principal account of the trust and distributable to the remainderman.
The remainderman urges that in view of the fact that the foregoing transactions were designated by the companies and generally known as stock splits, the lack of declaration or authorization of a dividend by either corporation but rather the distributions of the additional shares being authorized by the stockholders and further that the source of the distribution of the first Standard Oil dividend being from earned surplus is only a minute ratio to the amounts transferred from capital surplus and the fact that the Procter & Q-amble distribution being entirely from paid-in capital as well as the provisions of paragraph ‘ ‘ seventh ’ ’ of the agreement making no mention of stock splits warrant a determination that these distributions are not dividends and accordingly not ,payable to income but constitute principal.
Both Standard Oil distributions as well as the Procter & Qamble distribution were designated as split-ups or stock splits. The former were accomplished by transferring to capital account from capital surplus account and from earned surplus, and the latter solely from the transfer of paid-in capital.
The distinction between ‘ ‘ stock dividends ’ ’ and ‘ ‘ stock splits ” has been defined as follows: “ The essential distinction between a stock dividend and a stock split is that in the former there is a capitalization of earnings or profits together with a distribution of the added shares which evidence the assets transferred to capital, while in the latter there is a mere increase in the number of shares which evidence ownership without altering the amount of capital or surplus.” (Matter of Lawrie, 119 N. Y. S. 2d 906, 911.)
If the distribution in fact was either wholly or partly the result of capitalization of corporate surplus earnings or surplus capital legally available for distribution as dividends to stockholders, it must be considered as a true stock dividend to the extent of the capitalization, and not as a stock split, and is to be allocated to the income account of the trust instead of the principal account (Matter of Davis, 11 Misc 2d 372; Matter of Fosdick, 4 Misc 2d 1003, affd. 3 A D 2d 1000, affd. 4 N Y 2d 646 and cases cited).
In the Standard Oil stock distributions involved herein, the corporation in 1951 doubled the number of its issued shares of common stock then outstanding, and in 1956 tripled the number of such shares then outstanding, each time reducing the per share par value.' To pay for the additional shares on the *688 new basis the corporation in each distribution transferred to its capital stock account a major amount from its capital surplus and the balance from its earned surplus account. It is clear here that both of these distributions were partially true stock dividends to the extent that the surplus accounts were capitalized in connection with the additional stock created, making due allowance for the reduction in par value, and the portion of the shares represented thereby must be allocated to income. These same Standard Oil distributions were considered and so determined in recent decisions: the 1951 distribution in Matter of Bernard (3 Mise 2d 31); Matter of Horrmann (4 Misc 2d 156, mod. 3 A D 2d 5) and Matter of Berger (Bankers Trust Co.) (6 Misc 2d 468) and the 1956 distributions in Matter of Thoms (4 Misc 2d 987) and Matter of Muller (5 Misc 2d 83).
In connection with the Procter & Gamble Company distribution, the corporation doubled the number of shares of its outstanding common stock, reducing the per share par value. Payment for the additional shares here was made by the corporation by transferring solely from paid-in capital to the capital stock account.
I am of the opinion that there is no basis to the contention that a differentiation should exist between earned surplus earnings and capital surplus, as contended here, to the effect that only a stock distribution which results from capitalization of earned surplus constitutes a stock dividend allocable to income. The settlor in providing that all dividends received by the trustee payable in the stock of the corporation authorizing or declaring them payable in the stock of a corporation other than the one authorizing or declaring them shall be considered as wholly income has indicated a clear intention that the origin of the surplus is not to be a decisive factor.
The fact that a corporation may refer to a stock distribution as a stock split and it may be considered as such by the public at large does not control the legal significance of the corporate action. Nor does it matter that the amounts transferred to capital account from surplus earnings were small in comparison to the amounts transferred from surplus capital or solely from paid-in capital. Nor do other considerations such as the market value of the stock before and the resulting value after distribution, tax procedures or other practices in the financial world relating to stock transactions govern the situation here. What is principal and what is income in other relationships or circumstances does not necessarily determine *689 principal and income in the relationship between trust life tenant and remainderman or the equities between them.
Accordingly, the court approves the allocations as proposed by the life beneficiary to the extent and in the manner set forth in his memorandum and the trustee is directed to allocate the dividends in accordance therewith. The motion to settle the account is granted accordingly.
Settle order, at which time fees and allowances will be fixed.