CITY BANK FARMERS TRUST COMPANY, Individually and as Trustee, Respondent, *v.* BARBARA G. WYLIE et al., Respondents, and CHASE NATIONAL BANK OF THE CITY OF NEW YORK, as Administrator of the Estate of Sims G. WYLIE, Deceased, Appellant.

Argued January 13, 1937; decided March 16, 1937.

306

*William Byrd* and *Thomas A. Ryan* for appellant. When a trustee receives an apportionable stock dividend, the number of shares to be allocated to income is that proportion of the total number of shares received by the trustee which the undistributed true earnings of the corporation during the period in question bear to the intrinsic value of the total number of shares comprising the dividend. This rule requires the allocation of 96.8 shares of the stock dividend here involved to income. (*Matter of Harteau*, 204 N. Y. 292; *Thayer* v. *Burr*, 201 N. Y. 155.) For the purpose of calculating the true undistributed earnings of the power company during the designated period the undistributed surplus earned during the designated period should be augmented by a sum representing the power company's share of depreciation reserves of its subsidiary companies earned subsequent to March 23, 1921, and restored to surplus by the board of directors in February, 1925, following the engineers' appraisal. (*Bourne* v. *Bourne*, 240 N. Y. 172.) An allocation to income of 96.8 shares out of the stock dividend of 374.4 shares of the power company should have been made. (*Matter of Osborne*, 209 N. Y. 450; *Bourne* v. *Bourne*, 240 N. Y. 172; *Robertson* v. *deBrulatour*, 188 N. Y. 301; *Matter of Harteau*, 204 N. Y. 292; *Thayer* v. *Burr*, 201 N. Y. 155; *United States Trust Co.* v. *Heye*, 224 N. Y. 242; *Macy* v. *Ladd*, 227 N. Y. 670; *Pratt* v. *Ladd*, 253 N. Y. 213; *Matter of Hagen*, 262 N. Y. 301; *Matter of Enz*, 204 App. Div. 634; 237 N. Y. 577; *Matter of Jackson*, 258 N. Y. 281.)

*George F. Losche, Walter E. Cooper, Charles H. Birdsall* and *Liston C. Bertram* for respondents. The life tenant should be charged to the extent that the corpus of the trust was depleted by the dilution in the value of the power company stock resulting from the issuance of additional stock at par. (*Matter of Hagen*, 262 N. Y. 301; *Baker* v. *Thompson*, 181 App. Div. 469; 224 N. Y. 592; *Matter of Osborne*, 209 N. Y. 450; *Bourne* v. *Bourne*, 240 N. Y. 172; *Morton* v. *Horton*, 189 N. Y. 398; *Matter of Deth* v. *Castimore*, 245 App. Div. 156; *Equitable Trust Co.* v. *Prentice*, 250 N. Y. 1; *Pratt* v. *Ladd*, 253 N. Y. 213; *McLouth* v. *Hunt*, 154 N. Y. 179; *Matter of Stevens*, 187 N. Y. 471; *Furniss* v. *Cruikshank*, 191 App. Div. 450; 230 N. Y. 495.) The corporation properly gave effect to the reserve for depreciation even though it transferred the same to surplus, and the integrity of the corpus of the trust was thereby preserved. (*City of Knoxville* v. *Knoxville Water Co.*, 212 U. S. 1; *The Minnesota Rate Cases*, 230 U. S. 352; *Chesapeake & Ohio R. Co.* v. *United States*, 5 Fed. Supp. 7; *McLouth* v. *Hunt*, 154 N. Y. 179.)

LOUGHRAN, J. This is an action by a trustee for judicial settlement of its account.

The trust was established by an instrument dated July 6, 1910. We are not concerned with its administration at any time antecedent to March 23, 1921. On that date its capital consisted of 300 shares of the stock of a utility holding company (hereinafter called the corporation) having a number of subsidiaries. On December 28, 1921, the trustee received a stock dividend of 20 per cent or 60 shares of the corporation, and on December 15, 1922, another stock dividend of 30 per cent or 108 shares. By judgment for the judicial settlement of the account of the trustee to March 22, 1923 (the beginning of the period covered by the account now before us), the 168 shares produced by those two stock dividends were allocated 12 shares to principal and 156 shares to income.

With the capital of the trust thus 312 shares, the trustee

received on February 25, 1925, 374.4 additional shares out of a stock dividend of 120 per cent declared by the corporation on February 11, 1925. A judgment allocating those shares 358.1 to principal and 16.3 shares to income is in that aspect challenged on this appeal. The life beneficiary of the trust died on March 25, 1925. Appellant is his administrator. The respondents are the trustee and remaindermen. The controversy has two distinct phases.

(1) On January 25, 1925, the corporation offered to its stockholders the right to subscribe *pro rata* to an issue of 50,000 new shares of its capital stock at par-of $100 a share. The trustee did not subscribe but sold its rights so to do and properly credited the proceeds to principal. (*Baker* v. *Thompson*, 224 N. Y. 592.) The effect of that decision of the trustee was two-fold. On one hand, the capital of the trust was increased by the cash which the trustee received on the sale of its rights. On the other hand, the capital of the trust was decreased or diluted, because the purchasers of the new shares contributed to the capital account of the corporation only $100 per share, whereas the intrinsic or book value of each of its shares theretofore was largely in excess of $100. The first question to be determined is by whom any resulting loss to the trust capital shall be borne.

It has been held below that the remaindermen had an inchoate right to have a dilution so resulting in the capital value of the trust made up out of the 374.4 dividend shares paid to the trustee after the 50,000 new shares had been issued by the corporation. On that basis, some part of the 374.4 dividend shares was to that end to be allocated to the principal of the trust and it has been so decided. This result, it was thought, was dictated by the doctrine that the capital of a trust fund is to be preserved intact in accordance with the intention of the founder of the trust. (See *Matter of Osborne*, 209 N. Y. 450.) We think that doctrine does not sanction the conclusion that the trust capital may recapture out of a

future stock dividend a realized loss that had resulted because the trustee did not exercise its rights to participate in new shares of the corporation whose shares were in the trust.

The argument of the respondents overlooks the nature and incidents of each of several transactions to which that argument is addressed. It is not inevitable that the proceeds of a sale of rights to subscribe to stock will be less than the difference between the intrinsic value of the seller's old shares and the intrinsic value of his diluted shares. It may well be that after new capital comes into a corporation its shares, though greater in number, will have a higher market value than before. The value of this trustee's rights was not measurable by the difference between the subscription price and the intrinsic value of its 312 shares prior to dilution. The value of such a right is measured by the relationship between the cost of exercising it and the market value of the shares thereby procurable. The record does not show the price received by the trustee for its rights. There is no criticism of its failure to subscribe. In such a situation a trustee would perhaps be wise in concluding not to adventure new cash in the fortunes of the corporation and at the same time to retain a diluted share interest in an enterprise that was to be better financed by new cash to be contributed by others. For all that here appears, the resources of the trust were inadequate for exercise of the rights by the trustee. In any case, however, the amount received from sale of the rights did not represent the difference between the former book value of the shares in the trust and the book value of its diluted shares. Rather the proceeds of the rights constituted an increment extrinsically added to the trust capital and consideration of that element should, therefore, be here excluded.

When the project for the increase of the capital of the corporation was completed the total share issue became 342,016, having theretofore been 292,016. It was on this

aggregate of 342,016 issued shares that the stock dividend in question was thereafter declared and paid. Because the trustee did not take any of the new 50,000 share issue, the 312 shares in the trust represented, of course, a reduced fraction of the net worth of the corporation. But any consequent diminution of value in the trust capital, since it was occasioned by the decision of the trustee not to subscribe for the new shares but to sell the rights, was a loss then and there realized and thereupon defined and fixed as such. No part of such a loss should have been restored out of the stock dividend which was subsequently declared and had no relation thereto. Accordingly, we hold that the contrary ruling of the courts below was unwarranted, and that the capital value of the trust that was to be protected in the allocation of the 374.4 dividend shares was 312 shares of a corporation having 342,016 issued shares. As we turn from this branch of the case, it may be noticed that section 10 of the Personal Property Law (Cons. Laws, ch. 41) was amended and section 17-a of the statute was enacted after this trust was set up, and have here no application.

(2) A wholly separate problem is presented on this record which makes it necessary to consider certain corporate transactions in the form in which they were recorded.

In preparation for the capitalization of items on the books of the corporation and its subsidiaries, engineers made a study of the plants and properties of the several companies and of accounts which (except for that about to be discussed) are conceded to be items of capital increment. Following this study, entries were made in the books of the corporation which increased the book surplus by $34,117,565.43. When the prior surplus is taken into account, the effect was to create a surplus having a balance of $42,744,920.19 when the corporation declared the stock dividend of 120 per cent on February 11, 1925. The number of shares issued for payment of this dividend was 410,419.2 shares. Thereby the whole

surplus account was distributed to the stockholders except for a remaining balance of $1,703,000.19. That is to say, the issuance of the 410,419.2 dividend shares (each of a par of $100) resulted in taking out of the surplus account of the corporation $41,041,920, and increased the corporation's capital stock account by the same amount.

The item over which controversy arises on this branch of the case is entered on the corporation's books as its "proportion of amounts carried to surplus by" its named subsidiaries, "by entries charging off reserves for depreciation previously deducted from earnings . . . . $6,642,639.12."

The respondents contend and the courts below have held in effect that the entire surplus account set up on the books after the engineers' study was true capital and distributable as such. We think that to the extent of the item of $6,642,639.12 the surplus account represented earned surplus, i. e., income, and that the $34,117,565.43 increase in surplus recommended by the engineers and entered in the corporation's books represented capital increment only to the extent of $27,474,926.31.

It is clear from the engineers' report that as to the item of $6,642,639.12 there was a determination, later adopted by the corporation, that the earnings of its subsidiaries had been transferred to reserves in excess of actual needs. This item was transferred to the capital stock account through the surplus account into which it had gone as a transfer of earnings, and is accordingly in the same category as if it has always been in the surplus account as earned surplus. Much of that surplus had been earned before the 300 shares of the corporation went into this trust. It is apparently conceded that 27.2 of the dividend shares in question represent subsequent earnings. Assuming the correctness of that concession, the allocation to trust income should be increased by that number of shares.

The judgment of the Appellate Division should be reversed and that of the Special Term modified by allocating the stock dividend of 374.4 shares of the corporation received by the trustee on February 25, 1925, in accordance with this opinion and, as so modified, affirmed, with costs in this court to all parties, payable out of the fund.

CRANE, Ch. J., LEHMAN, O'BRIEN, HUBBS and RIPPEY, JJ., concur; FINCH, J., taking no part.

Judgment accordingly.