Harry D. Goldman, J.
This is a proceeding to settle the intermediate accounts of Security Trust Company under three separate trusts. For the purposes of this motion the terms of the trusts may be considered identical. The donor created the trusts to be held during the lifetime of his grandson, William Davis Thoms, and provided that the income be paid to his son Charles Davis Thoms. The principal of the trust is to be paid to Charles upon the death of his son William, or if he should be dead, to such persons as Charles shall appoint by his will; upon his failure to exercise the power of appointment, to his surviving issue.
The assets of the trust included 800 shares of stock of Caterpillar Tractor Company and on March 29, 1955 that corporation by action duly taken declared a' ‘ split-up ’ ’ of the common stock on a two for one basis which increased the holdings of the trust from 800 to 1,600 shares. The sole question to be determined here is whether the additional 800 shares which came from the “ split-up ” should be considered principal or income.
In the absence of any contrary provision in the trust agreements, section 17-a of the Personal Property Law would control and the stock would, by reason of that statute, be held as principal by the trustee. The trust agreements, however, in Article Fourth provide as follows: “ The trustee shall apply the entire net income of all investments at any time held by it hereunder to the use of the beneficiaries entitled thereto — and no dividend, ordinary or extraordinary, either in cash, stocks or other securities or property except liquidation dividends shall be considered principal.” This is a very broad and sweeping provision which clearly indicates a positive intention of the donor completely different from the rule of the statute. Our dilemma would be substantially more complicated without Article Fourth (Bourne v. Bourne, 240 N. Y. 172, 175).
Surrogate Collies succinctly demonstrates this in Matter of Lawrie (119 N. Y. S. 2d 906), where at page 912, he said: “ This testator has not left the matter of his intention to be presumed under one rule or another and has not made the origin of the surplus a decisive factor. He has expressly commanded that all *786 stock dividends ‘ shall be considered income.’ ” (See, also, Matter of Lloyd, 292 N. Y. 280, 285; Equitable Trust Co. v. Prentice, 250 N. Y. 1, 8; Matter of Strong, 198 Misc. 7, affd. 277 App. Div. 1157.)
It appears that in effecting the " split-up ” the corporation transferred from earned surplus $25,451,052.77. The balance required to make up the necessary amount at $10 par value per share was transferred from “ Capital in Excess of Par Value ” in the amount of $15,995,877.23. If the total of $41,446,930 had been transferred from the earned surplus account learned counsel for the trustee would agree that the additional stock issued under the ‘ ‘ split-up ’ ’ would be considered a stock dividend and would, under the terms of the agreements, be distributable to the beneficiary as income. The problem arises by reason of the transfer to stated capital from “ Capital in Excess of Par Value ”. At first blush the court might well believe that some division should be made between income and principal and that 16/41 of the new stock should be transferred to principal and 25/41 to income. Such an easy solution would however be a disservice to the already complicated condition of the law on this subject.
The trustee attempts to defend its position by giving undue weight to the fact that the corporation in its resolution refers to the transaction in question as a stock “ split-up ”. We are properly admonished “ not to make a fortress out of the dictionary ” (Cabell v. Markham, 148 F. 2d 737, 739). It is our obligation to look behind the language used to determine the question from what was done rather than what was said.
It would seem that in fact the new stock was issued by reason of the prior earnings of the corporation, and whether represented by earned surplus or by capital gains made in the sale of its stock, despite the different treatment which these two funds might receive under tax law, it is clear that the ‘ ‘ split-up ’ ’ or “ stock dividend ” was made possible by reason of earnings.
It may well be that sections 1500-1506 of the California Corporations Code persuaded the corporation to label the transaction a stock “ split-up ” rather than a stock " dividend ”. It seems to the court that no recent decision on the subject is more strikingly similar to the case at bar than that in Matter of Davis (128 N. Y. S. 2d 152). The fact situation there comes as close to the instant case as any the court has been able to find. There too similar language was used — “ two for one split ”. The net effect of the corporate action in the Davis case is almost exactly the same as the problem which confronts us. Again, we are indebted to Surrogate Collins for his clear and forthright state *787 ment at page 153: ‘ ‘ This court has heretofore pointed out the difference between a stock dividend and a stock split. See Matter of Lissberger, 189 Misc. 277, 71 N. Y. S. 2d 585, affirmed 273 App. Div. 881, 78 N. Y. S. 2d 199; Matter of Lawrie, Sur., 119 N. Y. S. 2d 906, 911. In the former, there is a capitalization of earnings or profits and a distribution of the shares which represent assets transferred to capital, while in the latter there is a mere increase in the number of shares without altering the amount of capital or surplus. The distinguishing feature ‘ is the permanent retention of earnings in the business through formal transfer of earned surplus, legally available for dividends to capital account.’ (Paton, Accountant’s Handbook [3d. ed.] p. 1016; Matter of Lissberger, supra.) ”
In the light of the declared intention of the donor to be as generous as possible with the life beneficiary by giving him dividends of all kinds except ‘‘ liquidation ’ ’ it seems to the court that the life beneficiary should have the 800 shares of Caterpillar Tractor Company as income under the trust agreements.
Submit order accordingly.