Charles B. Brasser, J.
This proceeding was instituted by Security Trust Company of Rochester for the judicial settlement of intermediate accounts of its proceedings as trustee of express trusts under three trust agreements, one of which was made by Charles M. Thoms on August 16,1935 and two of which were made by his wife, Helen D. Thoms, on August 16, 1935 and January 16, 1951. By their phraseology, the three trusts are virtually identical insofar as the issues now before this court *989 are involved. The original income beneficiaries, who were the donors, are now deceased. The trust agreements provided, among other things, that upon the deaths of the original income beneficiaries, the trusts were to be divided into two parts, one of which was for the benefit of the donors’ son, Charles Davis Thoms, the object ant herein, and one part for the benefit of his sister, Janet Thoms Ingersoll. We are concerned herein solely with the agreements as they affect the interest of the son, Charles Davis Thoms, as income beneficiary. The agreements provided that all income earned by the trust fund on the part of the trust estate set aside to him should be paid to him during the lifetime of his son, William D. Thoms. Upon the death of the life beneficiary’s son, the trustee is directed to pay the principal of the part set up in favor of Charles Davis Thoms, to him, if living. He was authorized and empowered to appoint by will his remainderman, and in the event such remainderman was not appointed, the principal was directed to be divided among his distributees.
The trust agreements contain the following provision: 1 ‘ The trustee shall apply the entire net income of all investments at any time held by it hereunder, to the use of the beneficiary entitled thereto * * * and no dividend [italics added] ordinary or extraordinary, whether in cash, stock or other security or property, except liquidation dividends, shall be considered principal. ’ ’
Objections to the accounts have been filed, as stated, by Charles Davis Thoms, the present life beneficiary. The sole issue raised by the objections is whether additional shares of stock issued by five corporations, now in the possession of the trustee and set forth in the account as trust assets, were, in fact, dividends issued by the corporations in stock and therefore net income payable to the income beneficiary pursuant to the provisions of the trust agreements, or whether they were, in fact, merely splits of pre-existing shares of which no part was income and therefore should be allocated by the trustee as part of the principal of the gross trust fund.
The Legislature in 1922 by section 17-a of the Personal Property Law (added by L. 1922, eh. 452, as amd. by L. 1926, ch. 843) laid down the general rule relative to the issuance of additional stock to a trustee as follows: “ Unless otherwise provided in a will, deed or other instrument, which shall hereafter be executed and shall create or declare a trust, any dividend which shall be payable in the stock of the corporation or association declaring or authorizing such dividend and which shall be declared or authorized hereafter in respect of any stock of such corporation composing, in whole or in part, the principal of such trust, sbql] *990 be principal and not income of such trust. The addition of any such stock dividend to the principal of such trust, as above provided, shall not be deemed an accumulation of income within the meaning of this article.”
It is evident that the contracting parties, at the time of the execution of the trust agreements, were mindful of this section and included the provision previously quoted for the purpose of circumventing the rule as prescribed by the Legislature.
Objections were previously filed in these proceedings by the present objectant because the trustee had charged to its principal account 800 additional shares of common stock issued by Caterpillar Tractor Company in March, 1955, increasing the holdings of the trust from 800 to 1,600 shares. As here, the objectant contended that the “ split-up ” should be designated as income payable to him and not principal to be added to the trust corpus. In his thoughtful decision, Mr. Justice Goldman held that since the corporation transferred a sufficient amount from earned surplus to effect the “ split-up ” the issue of stock was in fact in the nature of a dividend and should be turned over to the life beneficiary. He further held that the fact that a part of the assets transferred were from “ capital in excess of par value ” was no barrier in determining that the stock issue was income and not principal and that it was improper to divide between income and principal the issue of new stock accordingly.
In his decision, Mr. Justice Goldman cited the able memorandum of Surrogate Collins in Matter of Davis (128 N. Y. S. 2d 152, 153) in which Surrogate Collins defined the difference between a stock dividend and a stock split-up as follows: ‘ ‘ This court has heretofore pointed out the difference between a stock mvidend and a stock split. See Matter of Lissberger, 189 Misc 277, 71 N. Y. S. 2d 585, affirmed 273 App. Div. 881, 78 N. Y. S. 2d 199; Matter of Lawrie, Sur., 119 N. Y. S. 2d 906, 911. In the former, there is a capitalization of earnings or profits and a distribution of the shares which represent assets transferred to capital, while in the latter there is a mere increase in the number of shares without altering the amount of capital or surplus. The distinguishing feature ‘ is the permanent retention of earnings in the business through formal transfer of earned surplus, legally available for dividends to capital account. ’ ”
This court is convinced that in order to justify the setting aside of corporate stock split-ups to the income fund as dividends, it is necessary to determine whether or not in each instance the split-up was in fact merely “ watered stock ” or whether a transfer was made by the corporation of its surplus *991 assets in such amounts, either in whole or in part, as would make the issuance of such stock a dividend and a distribution among the stockholders of earned corporate assets.
In order to determine whether or not the split-up of stock of the five corporations should be allocated by the trustee to its interest or principal funds, it is necessary to consider seriatim the several issues.
This analysis is based on the court’s conclusion that the life beneficiary under the court’s interpretation of article Fourth is not entitled to stock issued as “ watered stock ” or a stock “ split ” of the original investment, where there is no transfer, in whole or in part, of corporate surplus, increasing the stockholders’ share in the corporate net worth.
The stock split of the Amerada Petroleum Corporation was a 11 true split which resulted in no change in the aggregate amount of the capital account represented by the issued stock and no change in the surplus account.” Therefore no dividend was included in the issue and the stock was properly credited by the trustee to its principal account. It was not a “ stock dividend.” (See Matter of Lindsay, 109 N. Y. S. 2d 600.)
Substantially the same plan was followed by General Motors Corporation by splitting each share of common stock into three shares of common stock, with “ no change in the aggregate amount of the capital account * * * and no change in the surplus account of the corporation. ’ ’ This stock was also properly credited by the trustee to its principal account.
The United States Steel Corporation in May, 1955 split its common stock so that two shares were issued for each share outstanding. There was no change in the capital or surplus account. The new stock can in nowise be deemed a dividend, since stockholders possessed no more assets or no greater interest in the corporation than before the split. The new issue was not a stock dividend and stock received thereunder must be credited by the trustee to its principal account.
Sunbeam Corporation changed each share of common stock of no par value into one share of common stock of $1 par value and thereupon issued one additional share for each two shares outstanding, transferring from the paid-in surplus account to the stated capital account the sum of $1 for each share distributed pursuant to the stock split. The effect of this split was to increase the issued shares.
The change to a $1 par value was to 11 minimize the Federal Stamp Tax burden.” The stock split was for the purpose of broadening the market for stock and increasing the number of stockholders.
*992 Following the reasoning of Mr. Justice Goldman in his decision involving Caterpillar Tractor Company, this split and additional issue is a stock dividend and, under the terms of the trust agreement, should be delivered to the life beneficiary.
Lastly, Standard Oil Company of New Jersey in 1956 issued two shares of capital stock additional for each share outstanding. Prior to this split, the par value of common stock was $15. The resolution of the board of directors, approved by the stockholders authorized all common stock to be evalued at $7 per share and the change in par value was “ reflected on the books ”of the company “ by increasing the capital stock account by an amount equal to $2 multiplied by the number of then issued and outstanding $7 par value shares, all of which was to be charged, first, ag’ainst the capital surplus account, with any amount still remaining after the capital surplus account is extinguished to be charged against the earned surplus account.”
It can be readily seen that this stock alteration again falls within the four corners of the decision of Mr. Justice Goldman and the subsequent issue was a stock dividend payable to the life beneficiary.
It is immaterial whether or not the stock transactions were denominated as “ dividends ” or “ stock dividends ” on the books of the corporations. It is sufficient that there was a capitalization of earnings, either in whole or in part, and a simultaneous or subsequent distribution of shares of stock representing assets transferred to capital.
Submit order accordingly.