Henry Epstein, J.
This account has been finally settled by order of this court dated December 15, 1955 (Frank, J.), with the following reservation: 1 ‘ First: * * * Provided, however, that there is hereby expressly reserved for subsequent decision and settlement the proper allocation between principal and income of 8,200 shares of common stock of Borg-Warner Corporation received by the trustee as a stock dividend on January 19,1955, and 26,500 shares of capital stock of Standard Oil Company (Indiana) received by the trustee as a stock dividend on December 7,1954, and that the foregoing provisions of this Paragraph First are subject in their entirety to such reservation.”
All parties have agreed upon a stipulation of facts submitted on this motion. The stipulation briefly summarized indicates a trust set up on September 7, 1915 for the benefit of William Bingham, Second, and measured by two lives in being. Both measuring lives have now expired and the distribution of the assets of the trust is compelled. It is unnecessary to recite the history of this trust fund other than to indicate that its growth has been substantial. An original investment of $10,500,000 has matured to something in the neighborhood of $36,000,000.
The extraordinary stock dividend — the allocation of which is here questioned — centers on two corporations, viz., Standard Oil Company (Indiana), hereinafter called “ Standard Oil”, and Borg-Warner.
This trust held 26,500 shares of ‘ ‘ Standard Oil ’ ’ stock. On September 23, 1954 the board of directors adopted a resolution declaring a 62% cents dividend on each of its then outstanding-shares of capital stock payable out of its earned surplus to stockholders of record as of October 25,1954. The board further resolved: “ that a stock dividend of 100% on the capital stock of this Company issued and outstanding, including treasury stock, be and hereby is declared payable first out of capital surplus and the remainder out of earned surplus, on the 1st day of December, 1954 to stockholders of record at the close of business on the 25th day of October, 1954.”
On December 1,1954 the trustee received an additional 26,500 shares of the capital stock of 1 ‘ Standard Oil ” of a par value of $25.
The annual report for 1954 of ‘ ‘ Standard Oil ’ ’, referring to the aforesaid capital stock distribution, states:
‘ ‘ On December 1,1954, the Company distributed one share of its common stock out of its authorized but previously unissued stock for each share held by stockholders of record on October 25, 1954.
*369 “ This distribution doubled the total par value of issued shares on the record date and eliminated $174,612,840 of1 Capital in excess of par value ’ and $231,133,569 of ‘ Earnings retained and invested in the business There was no change in the par value per share, which remains at $25. ’ ’
The trustees apportioned to income 15,059.73 shares of this extraordinary dividend (representing the proportion of earned surplus charged to pay for the ‘ ‘ dividend ’ ’ over the total cost of the “stock dividend ”, or 56.9650% of the shares). The balance remains in the principal of the trust. It is conceded that the intact value of the trust has not been impaired. The objectants, however, take the position that since there has been no impairment, the entire extraordinary dividend belongs in its entirety to life tenants (income).
The second corporation, whose extraordinary stock dividend is the subject of inquiry herein, is Borg-Warner. The trust held 4,100 shares of this stock on the effective dates of the dividend. The stock was not all purchased on one date — as was the “ Standard Oil ” stock — but was bought in varying amounts over a period of approximately four years.
On December 10,1954, the stockholders approved a proposal to declare a stock dividend and on the same date, the board of directors adopted the following resolution: 1 ‘ Further Resolved, that simultaneously with said amendment’s becoming effective the officers are authorized and directed to transfer from the corporation’s capital surplus account (designated on the books as ‘ Capital in excess of par value ’) to stated capital the total amount of capital surplus, including all paid-in surplus, shown on the books of the corporation as of December 31, 1954 and as verified by the audit of Peat, Marwick, Mitchell & Co., and to transfer from earned surplus (designated on the books as ‘ Earnings retained for use in the business ’) to stated capital the balance necessary to increase the stated capital by an amount equal to $5 times the number by which the issued common shares are increased as a result of the reclassification of shares.”
The corporation thereupon transferred from the capital surplus account to the common stock account the sum of $21,340,734, and from the consolidated retained earnings account the sum of $4,061,354, to cover the 5,080,417 additional $5 par value shares issued.
The trustees have concluded that 84.0118% of this distribution is a stock split and so goes to principal and 15.9882% was a stock dividend and goes to income.
*370 The trustees used the hig’hest book value per share of all the dates on which this stock was purchased and determined thereby that there had been no impairment of intact values. The objectants, however, separately calculated the effect of the stock dividend on the book value of the shares on the date each was purchased and they conclude that there has been an impairment of the intact value. They call for the addition of 4,463.9702 shares to the trust principal and the balance to be allocated to income. The argument advanced is similar to that offered on the “ Standard Oil ” shares — that where there is no impairment or where the impairment has been corrected, the balance is to go to income.
The settlor has not indicated in the trust instrument any direction for the payment of extraordinary dividends. Since this trust was set up in 1915 the statute, section 17-a of the Personal Property Law, does not apply. (City Bank Farmers Trust Co. v. Wylie, 273 N. Y. 304.) The court must therefore “ determine the nature of the dividend and the rights of the contending parties according to justice and equity.” (Matter of Osborne, 209 N. Y. 450, 475.)
Similar transactions to the one herein have elicited a multitude of interpretations not easily applied or distinguished. The first avenue of approach must necessarily be the nature of the transaction. Is the instant disposition by the directors of the corporation a stock dividend or a stock split, or is it part of each?
The difference between a stock split and a stock dividend has been stated as follows: ‘ ‘ The essential distinction between a stock dividend and a stock split is that in the former there is a capitalization of earnings or profits together with a distribution of the added shares which evidence the assets transferred to capital, while in the latter there is a mere increase in the number of shares which evidence ownership without altering the amount of capital or surplus [cases cited].” (Matter of Lawrie, 119 N. Y. S. 2d 906, 911.)
And, also, Matter of Davis (11 Misc 2d 372), as follows: “The distinguishing feature 1 is the permanent retention of earnings in the business through formal transfer of earned surplus, legally available for dividends to capital account. ’ (Paton, Accountant’s Handbook [3d ed.] p. 1016; Matter of Lissberger, supra [189 Misc. 277].) ”
Equitable Trust Co. v. Prentice (250 N. Y. 1, 7-8): “The rule in this State was settled, until changed in 1926 as to subsequent trusts by an amendment of the statute (L. 1926, ch. 843, amending Pers. Prop. Law, § 17-a), that as between life *371 beneficiary and remainderman a stock dividend would be reckoned as principal or income according to the origin of the surplus out of which it was declared. To the extent that it distributed a surplus existing at the creation of the trust, it would be allocated to principal; to the extent that it distributed a surplus earned thereafter, it would be allocated to income [cases cited].” (See, also, Matter of Lloyd, 292 N. Y. 280, 285.)
The question of impairment of intact value is not in issue in the “ Standard Oil” distribution but objectants raise that issue in the Borg-Warner distribution.
The proper dates to be used in determining impairment of intact value are the date of purchase and the date the dividend is declared. (Bogert on Trusts and Trustees, Yol. 4, pt. 1, § 849, p. 353; Matter of Hamersley, 152 Misc. 903, 909.)
If after the declaration of a stock “ dividend” the original share and the new shares which are received by way of stock dividend have a total value of less than the original book value then there has been impairment. There is no such diminution here. The value after the declaration exceeds the value of the trust investment at the time of each purchase.
Having disposed of the method of allocation as indicated above, there remains one further inquiry. The objectants claim that even if the method of allocation urged by the trustees is correct nevertheless the accounting methods of both corporations have deprived the life tenants of their proper share of the dividend.
The courts of this State have on other occasions discussed and determined this issue.
Pratt v. Ladd (253 N. Y. 213, 218): “ ‘The mere adoption by the corporation of a resolution cannot change accumulated earnings into capital, as between the life tenant and remainder-man.’ (McLouth v. Hunt, 154 N. Y. 179, 198.) * * * What is treated as capital by the corporation may be income to the life beneficiaries of the trust. (Equitable Trust Co. v. Prentice, 250 N. Y. 1.) ”
See, also, Sturgis v. Roche (217 App. Div. 573, 583-584, mod. 247 N. Y. 585): “ Thus the established rule not only permits, but requires us to examine the financial statement or balance sheet of the corporation and ascertain if possible from the facts and evidence in the record both whether items of capital and surplus assets, in truth previously destroyed, are erroneously entered as existing and of value, and whether items of capital and surplus assets, actually existing, are erroneously entered as not existing or destroyed and of no value, tha/t is, *372 we should take account of the actual facts, whatever they may be.”
(See, also, Matter of Untermyer, 95 N. Y. S. 2d 2, 4.)
The amounts claimed by obj octants to have been improperly credited raise a substantial question of accounting practice. This issue cannot be determined on the papers submitted and the court, therefore, determines that on this issue a reference be had to hear and report on the appropriate accounting methods to be used.
Settle order accordingly to include the specific items of the corporate records to which objections are raised and which will be heard and reported by the referee with his recommendations.