Maximilian Moss, S.
This is a proceeding to settle judicially the trustee’s third intermediate accounts of two equal trusts into which the residuary estate was divided. In one trust testator’s surviving daughter was the primary life income beneficiary. Upon her death on December 18, 1955, without issue, the child of a predeceased daughter of testator became the secondary life income beneficiary. The granddaughter is also the life income beneficiary of the other trust. Her issue and testator’s brothers and their issue are contingent remaindermen. Objections to the accounts on behalf of the granddaughter and the estate of testator’s deceased daughter raise the frequently difficult and litigated issue of proper. apportionment of shares of stock received by a trustee as a result of a stock distribution and their allocation to the income and principal accounts of the trust. The *171 enactment of section 17-a of the Personal Property Law was prompted partly by the problems in apportionment created by stock distributions of Standard Oil Company of New Jersey, whose stock is involved herein (see Ann. 130 A. L. R. 591; 42 .Cornell L. Q., 595-603; 31 N. Y. U. L. Rev. 709, 1473; 32 N. Y. U. L. Rev. 442, 878,1448; Ann. 44 A. L. R. 2d 1277-1316).
All material facts are stipulated. Testator died on September 18, 1927, leaving a will executed on April 20, 1923, and thus the trust is not controlled by section 17-a as amended in 1926. The present accounting period runs from November 12, 1941 to June 6,1956. At the beginning of this period the trustee held in each trust 292 shares of $25 par value capital stock of Standard Oil Company of New Jersey. The shares had been received by the trustee as part of the original principal of the trust. They then had a per share book value of $40.71, or a total of $11,887.32. As a result of a 2-to-l stock distribution in 1951 the trustees exchanged said 292 shares for 584 shares of the company’s capital stock reduced to $15 par value but increased to $44.79 in book value per share. Another stock distribution in 1956, this time characterized as a 3-to-l stock split, resulted in the exchange of said 584 shares for 1,752 shares further reduced to $7 par value with a book value of $24.08 per share. The accounts show that the entire 1,752 shares of stock remain in the principal account of each trust.
The objeetants contend that the trustee is required to apportion and allocate to the income beneficiary the portion of the additional shares which were received as stock dividends in each distribution. The shares of stock so received would be represented by the amounts transferred to capital account from earned surplus and capital surplus. The special guardian for the infant remaindermen maintains that both distributions constituted stock splits and not stock dividends and that all 1,752 shares are therefore properly allocated to principal. Even if the distributions are held to be partial stock dividends, he argues for an apportionment on a basis different from that suggested by the objeetants. The trustee takes the position of a stakeholder and explains its allocation of all of the shares to principal on the basis of the corporate characterization of the distributions as a “ stock split.” But all parties agree that if either distribution is held to be in whole or in part a stock dividend the proper allocation of such dividends will be governed by the rule laid down in Matter of Osborne (209 N. Y. 450) as amplified by later cases. This rule established the presumed intent of the creator of a trust prior to the 1926 amendment of section 17-a of the Personal *172 Property Law when no direction as to apportionment appears in his will or other trust instrument. As between principal and income beneficiaries of a trust a stock dividend is considered principal or income according to the origin of the surplus out of which it was declared. To the extent that it distributed surplus capital existing at the creation of the trust or at the time the stock was acquired by the trustee — which fixes the so-called intact value of the corpus of the trust — it is allocable to principal, and to the extent it distributed surplus capital arising thereafter it is allocable to income provided the corpus of the trust is not impaired, in which case apportionment is made so as to preserve the integrity of the corpus. Distribution of earned surplus by way of stock dividends is always allocable: to income if gained by the corporation after creation of the trust or acquisition of the stock by the trustee, and to principal if gained prior thereto (Equitable Trust Co. of N.Y. v. Prentice, 250 N. Y. 1; Matter of Hagen, 262 N. Y. 301; City Bank Farmers Trust Co. v. Wylie, 273 N. Y. 304; Matter of Lloyd, 292 N. Y. 280).
It should be noted that although a corporation may refer to a stock distribution as a “ stock split ” and it may have been publicly so considered, such characterization does not control the legal significance of the corporate action. If the distribution in fact was either wholly or partly the result of capitalization of corporate surplus earnings or surplus capital legally available for distribution as dividends to stockholders it must be considered as a true stock dividend to the extent of the capitalization, and not as a stock split, to be allocated to the income account of the trust instead of principal account (Matter of Davis, 11 Misc 2d 372; Matter of Fosdick, 4 Misc 2d 1003, affd. 3 A D 2d 1000, affd. 4 N Y 2d 646 and cases cited.)
In the stock distributions involved herein, the corporation in 1951 doubled the number of its issued shares of common stock then outstanding, and in 1956 tripled the number of such shares then outstanding, each time reducing the per share par value as hereinabove mentioned. To pay for the additional shares on the new basis the corporation in each distribution transferred to its capital stock account á major amount from its capital surplus and the balance from its earned surplus account. It is clear that both distributions were partially true stock dividends to the extent that the surplus accounts were capitalized in connection with the additional stock created, making due allowances for the reduction in par value. The portion of the shares represented thereby must be allocated to income. It is therefore held that so much of the stock distributions received by this trustee *173 as represented a return of capital or watering down of the previously outstanding stock, commonly referred to as stock split-up, are to be retained in principal, and such portion as is represented by earnings, transferred from earned surplus, or from profits realized on capital assets transferred from capital surplus into capital account shall be allocated to the respective income beneficiaries of the trusts. Although the “ transfer of surplus ” test hereby applied has been criticized it accords with the trend to simplicity and certainty in stock apportionment matters (see 32 N. Y. U. L. Rev. 878). These same stock distributions were considered and so determined in recent decisions, the 1951 distribution in Matter of Bernard (3 Misc 2d 31); Matter of Horrmann (4 Misc 2d 156, mod. 3 A D 2d 5) and Matter of Berger (6 Misc 2d 468) and the 1956 distribution in Matter of Thomas (3 Misc 2d 784, 4 Misc 2d 987) and Matter of Muller (5 Misc 2d 83); see Matter of Duell (8 Misc 2d 114, affd. 5 A D 2d 815).
Similar stock distributions of other corporations were likewise so treated in other recent cases dealing with trusts governed by the rule in the Osborne case (Matter of Fosdick, supra, Matter of Payne, 11 Misc 2d 367, mod. 4 A D 2d 937; Matter of Sanford, 4 Misc 2d 487). They were otherwise determined where the trusts contained directions as to apportionment (Matter of Matthews, 280 App. Div. 23, affd. 305 N. Y. 605; Matter of Muller, 145 N. Y. S. 2d 283; Matter of Lawrie, 119 N. Y. S. 2d 906; Matter of Harjes, 9 Misc 2d 792; Matter of Morron, 10 Misc 2d 861), or absent any such direction by application of section 17-a of the Personal Property Law to trusts created after the 1926 amendment (Matter of Thoms, supra, see Matter of Sanford, 9 Misc 2d 308).
The special guardian differentiates between surplus earnings and surplus capital and contends that only a stock distribution which results from capitalization of earnings constitutes a stock dividend allocable to income. This is not the law in New York (Stock Corporation Law, § 58) nor was it in New Jersey at the time at least of these distributions (N. J. Rev. Stats., 1937, tit. 14, § 14:8-20) which authorized declaration of dividends out of “ surplus or net profits ”, construed to mean surplus earnings or surplus capital (National Newark & Essex Banking Co. v. Durant Motor Co., 124 N. J. Eq. 213, affd. 125 N. J. Eq. 435 and cases cited hereinabove). The case relied upon by the special guardian is not to the contrary (Matter of Payne, supra). In that case the portion of the stock dividend representing capital surplus transferred to the capital account was allocated to principal because there the intact value of the trust included such surplus *174 when the stock was purchased by the trustee, and the principal was therefore credited with the full book value as of that time in order not to be impaired. In the present case it appears that none of the surplus capital transferred to the capital account existed at the time the stock was received by the trustee at the creation of the trusts, and its capitalization did not affect the intact value of the principal of the trust (see Matter of Duell, supra, 32 N. Y. U. L. Rev. 878). Nor does it matter that, as emphasized by the special guardian, the amounts transferred to capital account from surplus earnings were small in comparison to the amounts transferred from surplus capital, perhaps only to permit fixing the par value of the new stock at an even figure. Nor do other considerations mentioned matter, such as market value of the stock before and after distribution, the rules of the New York Stock Exchange as to when a stock distribution may or may not be designated a stock dividend and other practices in the financial world relating to stock transactions. Matter of Osborne (209 N. Y. 450, 485, supra) expressly states: “ Market value, good will and like considerations cannot be considered in apportioning a dividend.” What is principal and income in other relationships or circumstances do not necessarily determine principal and income in the relationship between trust life tenant and remainderman or the equities between them (Matter of Payne, 11 Misc 2d 367, supra and cases cited).
Accordingly the court approves the objectants’ proposed allocations. Of the 584 shares of stock received by the trustee in each trust in the 1951 distribution approximately % or 97% shares represent capitalized earnings or profits and constitute a stock dividend allocable to the income account. The 97% shares became 292 shares in the 1956 stock distribution allocable to income. Deducting this figure from the 1,752 shares of stock received by the trustee in each trust in the 1956 stock distribution leaves 1,460 to be apportioned. Of this number approximately 2/7 or 417 1/7 shares represent capitalized earnings or profits and constitute a stock dividend allocable to income, making a total of 709 1/7 shares of $7 par value stock to be delivered to the respective income beneficiaries of the trusts, the remaining 1,042 6/7 shares to be allocated to principal in each trust. The figures are rounded out to avoid complicated fractions and are subject to adjustment between the parties as stated in the filed stipulation.
Proceed accordingly.