Samuel W. Eager, J.
This is a proceeding under article 79 of the Civil Practice Act brought by the petitioner, Bankers Trust Company, as surviving trustee of an express trust, for a judicial settlement of its intermediate account of its trusteeship from the inception of said trust, to wit: July 7, 1937, up to and including May 29,1957, a period of almost 20 years, and for such further relief as the court may deem just and proper.
The trust involved herein was created on July 7, 1937 by an agreement or indenture between the settlor, Carleton D. Fletcher, and the petitioner herein and himself as the trustees. The original trust corpus consisted of a quantity of cash, stock and securities having an estimated gross value of $518,653.25 *688 and also five insurance policies on the life of the settlor having a gross face value of some $90,000. The securities and the proceeds of the policies, under the terms of the indenture, were to be held, managed, invested and reinvested by the trustees with the income thereof to be paid over to the settlor’s wife, Elizabeth, now Elizabeth T. Adams, during her life, his two children, Margaret and Anne Louise, during their lives, and his grand children, then as yet unborn, upon the death of Margaret or Anne Louise. It was provided that there should be paid to settlor’s wife (now Mrs. Adams) from the annual income the sum of $12,000 plus one third of yearly income in excess of that amount; to Margaret one third of yearly income in excess of $12,000; to Anne Louise, one third of yearly income in excess of $12,000.
The issue of Margaret (three infant children) and the issue of Anne Louise (one infant child) succeed to parent’s income share if parent dies before Mrs. Adams, and to principal per stirpes upon death of both Mrs. Adams and mother of said issue. The present issue are infants, and a duly appointed special guardian appears herein in their behalf.
Article Twelfth of the instrument provides as follows: ‘1 All cash dividends, whether ordinary or extraordinary, all dividends payable in the stock of the corporation authorising or declaring them and all dividends payable in the stock of a corporation other than the one authorizing them shall be treated by the trustees and/or the surviving trustee as income.” (Italics supplied by the court.)
Included within the securities held by the trustees were the stocks of certain corporations which, during the accounting period, did make distributions in stock to stockholders, and, by virtue thereof, the trustees did receive additional shares of stock in these corporations. The question arises whether or not these stock distributions are, wholly or in part, within the meaning of the trust indenture, “ dividends payable in the stock of the corporation authorizing or declaring them ”, and thereby distributable to the income beneficiaries; or, whether or not, on the other hand, the stock distributions are wholly or partially to be considered as and allocated to principal to be held as a part of the corpus for the remaindermen.
The express provisions of the trust indenture render inapplicable section 17-a of the Personal Property Law which declares generally that dividends payable in stock shall be principal and not income of a trust. By its express provisions, said section applies only where not “ otherwise provided in a will, deed or other instrument ’ ’.
*689 Here, the settlor’s direction, that “ all dividends payable in the stock ” of a corporation were to be treated as income, is to be given effect. (Matter of Fosdick, 4 N Y 2d 646, 655.) “ Dividends ”, as the term is ordinarily understood, refers to such portion of the profits and surplus funds of a corporation as are validly set apart and distributed to stockholders (see 18 C. J. S., Corporations, § 457; Matter of Fosdick, supra, p. 653); and the term is to be so construed when used in a trust indenture unless otherwise indicated by context. The distribution of corporate surplus may be in cash, or by way of stock representing the surplus (see Matter of Fosdick, supra). Where distribution of surplus is in stock, and is carried out by segregating as capital that part of the surplus it represents, it is nevertheless in the category of a “ dividend ’ ’, and is known as a “ stock dividend ’ ’ (see Matter of Fosdick, supra).
It has been repeatedly held that, where a distribution by a corporation on its outstanding stock is in fact “ either wholly or partly the result of capitalization of corporate surplus earnings or surplus capital legally available for distribution as dividends to stockholders, it must be considered as a true stock dividend to the extent of the capitalization, and not as a stock split, to be allocated to the income account of the trust instead of principal account ”. (Matter of Blake, 14 Misc 2d 169 [Moss, S.]. Also, Matter of Fosdick, 4 Misc 2d 1003, affd. 3 A D 2d 1000, affd. 4 N Y 2d 646, supra; Matter of Muller, 5 Misc 2d 83 [Surrogate’s Ct.]; Matter of Davis, 11 Misc 2d 372.)
Attention has been called to the fact that some decisions have not applied the general rule v/here the dividend is partially from capital surplus instead of wholly out of earned surplus, or where the earnings are not capitalized simultaneously with the issue of the new stock (see Matter of Fosdick, 4 N Y 2d 646, 654, supra), but it is concluded that these decisions are not applicable here to limit the extent of the allocation to income of stock dividends which in fact represent distributions of corporate surpluses. It is also concluded that we are not to apply here the so-called “ Osborne rule ” (Matter of Osborne, 209 N. Y. 450) pursuant to which the time of accrual of the surplus which was capitalized is considered as a factor in determining the apportionment between principal and income.
Here, the trust indenture provides that all stock dividends are to be allocated to income (plainly referring to all stock dividends declared and payable following the execution of the indenture). The settlor’s intent, as manifested by his indenture is to be given full effect. (See Matter of Fosdick, supra, p. 655). The settlor here used the term “ all dividends ” with *690 out limitation, expressly stating that the same should be treated as income; and it is clear that he thereby intended all dividends paid upon stock held by the trustees, insofar as they represented a distribution of corporate earnings or surplus, were to be allocated to income, and there is no reason to assume that he intended that an inquiry be made as to the source or time of accrual of the corporate surpluses distributed by way of dividends.
Incidentally, it should also be noted that, under the law of this State, capital surplus, without regard to source or time of accrual, does constitute surplus funds which may be set aside and distributed to stockholders as a dividend (see Stock Corporation Law, § 58; Randall v. Bailey, 288 N. Y. 280; Williams v. Western Union Tel. Co., 93 N. Y. 162; Roberts v. Roberts Wicks Co., 184 N. Y. 257; Matter of Fosdick, 4 Misc 2d 1003, 1012, affd. 3 A D 2d 1000, affd. 4 N Y 2d 646, supra; Matter of Blake, 14 Misc 2d 169 [Surrogate’s Ct.]; Matter of Hogan, 138 N. Y. S. 2d 864, 869 [Surrogate’s Ct.]). And, in determining whether or not stock dividends shall be considered income to be allocated to income beneficiaries of a trust, there are decisions expressly supporting a holding that it is immaterial that the surplus segregated and distributed by way of the dividends consisted wholly or partly of capital surplus as distinguished from earned surplus. (See Matter of Fosdick, supra; Matter of Blake, supra; Matter of Hogan, supra; Matter of Chapman, 208 Misc. 390; Matter of Thoms, 4 Misc 2d 987.)
In view of the foregoing, it is concluded that all distributions in stock received by the trustees under the particular trust before the court are to be treated as income insofar as they are dividends representing surpluses existing at and capitalized at or prior to the distributions, and this, without regard to nature or source of surpluses capitalized. To hold to the contrary would visit upon the administration of this trust the application of technical rules and involve problems not within the contemplation of the settlor when he declared, without limitation, that all dividends were to be treated as income.
It appears that in certain instances, the distributions in stock did not at all or in whole represent profits or surplus set apart and transferred to the capital of the respective corporations. To such extent, the distributions were not ‘ ‘ dividends ’ ’ payable in stock within the meaning of the trust indenture. To such extent, they represent “ stock-splits ” or changes in principal, and are to be retained as part of the corpus of the trust. It should be noted that the income beneficiaries appearing herein withdraw their objections and do not question such allocations *691 to principal as has been made by the trustee in this connection.
In view of the conclusions reached, the trustee’s several computations and resulting allocations to principal and to income in connection with the several stock distributions received, as set out in its proposed amended account, appear to be correct. The trustee’s computations and conclusions with respect to the portion and extent that the several stock distributions represent earned surplus and capital surplus are adequately supported and are not questioned by anyone. Therefore, no hearing is required.
There is a question raised as to the right of the trustee to the principal commissions as claimed by it. The trust indenture provides: “ Article sixteenth: The Bankers Trust Company shall be entitled to receive commissions on both income and principal amounting to the statutory commissions allowed to executors and trustees by the applicable provisions of the laws of the State of New York. Commissions on income may be deducted at such times as the corporate Trustee elects. One-half of the commissions on principal shall be payable and may be deducted as of the date of receipt of the trust corpus or of any additions thereto (except that commissions on insurance policies shall be payable only upon the receipt of the proceeds of the policies) and the balance of the commissions on principal shall be payable and may be deducted upon the termination of the trust either in whole or in part. All property shall be valued for commission purposes as of the respective dates when commissions become due and payable.”
These provisions of the trust indenture are not deemed to be such as to limit the trustee to the commissions as fixed by the statute in effect at the time of the execution and delivery of the indenture. The trustee is entitled to principal commissions to be computed in accordance with the statute (Civ. Prac. Act, § 1548) as amended to the date of the- accounting. (Matter of Barker, 230 N. Y. 364, 372; Robertson v. de Brulatour, 188 N. Y. 301; Matter of Tuckerman, 60 N. Y. S. 2d 734; Matter of Knowles [Corn Exch. Bank & Trust Co.], N. Y. L. J., Sept. 20, 1950, p. 525, col. 7 [Special Term Supreme Ct.; Eder, J.].) Thus, the trustee is entitled to annual principal commissions as provided by the statute as amended to date. (Matter of Knowles, supra.)
It is further concluded that the trustee is not to be limited to a taking at this time of one half of the half commissions ordinarily allowed for receiving principal, nor to one half of the annual principal commissions provided for by the statute. Noted, of course, are the provisions of the indenture that “ one *692 half of the commissions on principal shall be payable and may be deducted as of the date of the receipt of the trust corpus * * * and the balance * * * payable * * * upon termination of the trust in whole or in part ”, but, in my opinion, such provisions were inserted merely in confirmation of the rule that one half of principal commissions are generally to be allowed as of time of receipt of principal and other half at time of disbursement 'thereof; and such provisions are not to be construed to limit or modify the effect of such rule.
The trustee, in addition to taking one half of total principal commissions as of time of receiving the trust principal (that is, the total receiving half of commissions), has taken the other one half on the part of the trust corpus or principal which has been paid out over the period of this accounting. Therefore, the trustee has taken total principal commissions on such portion of the principal as has been received and paid out to date. Now, generally speaking, commissions upon principal funds actually disbursed are to be paid in full upon an accounting following the disbursal of the funds. There has been here a “ termination * * * in part ” of the trust to the extent that principal has been heretofore paid out, and, therefore, the following here of the general rule with respect to time of allowance of the paying-out portion of the commissions is not contrary to the terms of the indenture.
The trustee’s account and amended account are approved. Settle final order at my chambers, Middletown, N. Y. Allowances will be fixed at time of signing of order. Provision to be made that all allowances and fees of special guardian and of attorney for the trustee are to be paid out of principal, and the allowance to the attorney representing income beneficiaries is to be paid out of income. Said last-mentioned attorney did not appear until the proceeding on the amended account, which proceeding and his services resulted principally in the benefiting income beneficiaries.