Edgar J. Nathan, Jr., J.
This is a proceeding by the Bankers Trust Company for the judicial settlement of its first intermediate account as trustee under an inter vivos trust established on December 11, 1931. In connection with the settlement of its account the petition seeks a construction of article “ eighth ” of the trust agreement with respect to the trustee’s commissions and by supplemental petition seeks a construction of article “first” and “third” with respect to the proper allocation of various stock distributions as between principal and income.
Since the inception of the trust, six corporations whose capital stock constituted part of the corpus of the trust issued one or more stock distributions. These distributions, designated as stock splits by some of the corporations involved, have been held by the trustee in its principal account. The supplemental petition seeks a determination as to the proper disposition of these shares under the trust agreement.
Article ‘1 third ’ ’ of the trust agreement provides that: 11 All stock dividends and extraordinary cash dividends which shall be received by the Trustee hereunder shall be considered by it as wholly income and distributed to the beneficiary or beneficiaries hereunder accordingly. ’ ’
It is sufficient for the purposes of this opinion to state that five of the distributions involved capitalizations in part from earnings and capital surplus, whereas another three involve capitalization in part from capital surplus. The issue presented is to what extent the stock distributions in question are “ stock dividends ’ ’ and properly allocable to income under the trust instrument or stock splits which, it is conceded, go to principal.
In all the distributions here involved, the capitalization was made simultaneously with the stock distribution and by a transfer to capital from a fund otherwise legally available for the payment of dividends. To the extent, at least, that the distribution was accompanied by a simultaneous capitalization of earned surplus it represents a stock dividend (Matter of Fosdick, 4 N Y 2d 646). To the extent that the distribution capitalized surplus which would otherwise have been available for payment of dividends, i.e. capital surplus, the overwhelming weight of authority is to the effect that this also constitutes a stock dividend (Matter of Horrmann, 3 A D 2d 5; Matter of Berger [Bankers Trust Co.], 6 Misc 2d 468; Matter of Thoms, 3 Misc 2d 784; Matter of Muller, 5 Misc 2d 83).
All of the distributions in question comport with the judicial definition of the term “ stock dividend ”. A stock dividend is issued by means of a change in bookkeeping entries from earned *463 or capital surplus to capital and by a prorata distribution to the stockholders of additional shares, the par value of which represents the increased capital. A stock split is accomplished by a mere increase in the number of outstanding shares represented by the same capital. The essential distinction which emerges from the cases appears to be that a stock dividend reduces surplus and requires a corresponding adjustment to capital, whereas a stock split does not. (See Matter of Fosdick, supra, 653; Matter of Lissberger, 189 Misc. 277, affd. 273 App. Div. 881; Matter of Lawrie, 119 N. Y. S. 2d 906; Matter of Davis, 11 Misc 2d 372.)
In the absence of a clear expression of the settlor’s intent to the contrary, the court finds that the distributions in issue are “ stock dividends ” to the extent they represent a capitalization of surplus, legally available for dividends. Moreover, some of the same stock distributions involved in this proceeding have previously been held by the courts to be true stock dividends or have been treated as such. (1951 and 1956 stock distributions of Standard Oil Company of New Jersey — Matter of Horrmann, supra; Matter of Muller, supra; Matter of Duell, 8 Misc 2d 114; Matter of Berger [Bankers Trust Co.], supra; 1951 distribution of the Texas Company — Matter of Davis, supra; Consolidated Natural Gras Company distribution — Matter of Berger [Bankers Trust Co.], supra.)
The fact that a distribution is made from capital surplus, a capital account, as distinguished from accumulated earnings, is of no consequence in applying the afore-mentioned test. The legal meaning of surplus is not necessarily consistent with accounting concepts. Whatever significance this distinction has for trust accounting purposes, it does not warrant a departure from precedents cited (cf. Matter of Payne, 11 Misc. 2d 367, mod. 4 A D 2d 937). Nor is the fact that the corporations themselves or the financial community at large may regard one or more of these distributions as stock splits rather than stock dividends a controlling consideration {Matter of Fosdick, supra, 655).
The stock distributions in question represent stock dividends to the extent that the par or stated value of the additional shares is represented by a transfer from surplus to stated capital. Accordingly, the number of shares properly allocable to income in accordance with this opinion are as follows:
Four hundred (400) shares of stock of American Gras and Electric Company,
Fifty (50) shares of stock of Consolidated Natural Glas Company,
*464 Two hundred (200) shares of stock of Minneapolis-Honeywell Regulator Company,
Fifty (50) shares of Monsanto Chemical Company,
Two hundred forty-two and eight hundred fifty-seven one-thousandths (242 857/1000) shares of stock of Standard Oil Company of New Jersey, and
Four hundred fifty (450) shares of stock of the Texas Company.
The court construes article ‘ ‘ eighth ’ ’ of the trust instrument to entitle the trustee to separate commissions for the administration of each of the three trusts involved.
The trustee is directed to amend his account accordingly and submit same for settlement on or before June 22,1959.