In the Matter of the Accounting of CENTRAL TRUST COMPANY, as Trustee of Express Trust Created between HALFORD R. CLARK and Others.

Supreme Court, Special Term, Monroe County, July 23, 1962.

*Nixon, Hargrave, Devans & Dey (W. Clyde O'Brien* and *Julian W. Atwater* of counsel), for Williams College, petitioner. *Kaye, Scholer, Fierman, Hays & Handler (Milton Kunen* of

counsel) and *Goldstein, Goldman & Kessler* (*Manuel D. Goldman* and *Andrew M. Greenstein* of counsel), for Lucy F. S. Clark, respondent. *MacFarlane, Harris, Martin, Kendall & Dutcher* (*Darrow A. Dutcher* of counsel), for Central Trust Company, as trustee. *Van Schaick, Woods, Strathman, Sturman & Costanza* (*Howard M. Woods* of counsel), general counsel for trustee.

G. ROBERT WITMER, J. Petitioner, Williams College, has instituted this article 79 proceeding to compel Central Trust Company of Rochester, New York, as trustee of an express trust, created by agreement dated May 15, 1957 between Halford R. Clark, Lucy F. Squire Clark and said trustee, to render and settle its account with respect to 8,000 shares of common stock of Eastman Kodak Company received by the trustee as a result of a stock distribution made by said company in 1959, and for an order requiring said trustee to restore said 8,000 shares to the corpus of said express trust, of which petitioner is the remainderman.

It appears that the trust was established by Halford R. Clark as part of his matrimonial settlement (Exhibit 10) with his then wife, Lucy F. Squire Clark, whom he had married in 1948 and with whom he had made a prior separation agreement in 1950. For some years prior to 1957 Mr. Clark had sought a divorce from his wife and her agreement to release all interest in his estate. Their attorneys negotiated for such agreement for several years, the negotiations culminating in Exhibit 10, comprised of the later separation agreement and the express trust agreement. In the separation agreement the wife released her husband from all obligations of support and released all interest in his estate, and the husband agreed to transfer 8,000 shares of common stock of Eastman Kodak Company to respondent Central Trust Company, at first in escrow and then conditionally in trust pursuant to the express trust agreement executed by the husband, the wife and Central Trust Company at the same time as the separation agreement was signed.

In the separation agreement it was provided that if a decree of absolute divorce were granted between said husband and wife within six months of that date, the husband would thereupon pay to the wife $70,000 in cash, transfer 250 shares of Eastman Kodak Company common stock to her absolutely and

"(I)n addition thereto and as an integral part of said lump sum settlement, all stock, bonds, rights, warrants, evidences of indebtedness and other property issued by the Eastman Kodak Company, or the issuance or delivery of which has accrued during the life of the Wife or prior to her remarriage upon the

"Corpus of the Trust Fund,' (as defined by Exhibit ' A ') shall be delivered and transferred by said Trustee absolutely to the wife for her own use forever.

* * *

" It is the intention of the parties hereto that upon the termination of the Trust referred to, only the ' Corpus of the Trust Fund ' (as defined by Exhibit ' A ') shall be paid over to the President and Trustees of Williams College, pursuant to said Exhibit, and that all stock, bonds, rights, warrants, evidences of indebtedness and other property issued by the Eastman Kodak Company in addition to, or in lieu of cash income upon said ' Corpus of the Trust Fund,' which may become due and payable as aforesaid, shall be delivered and transferred absolutely by the said Trustee to the Wife, for her own use forever."

In the trust agreement the husband, grantor, delivered to the trustee 8,000 shares of common stock of Eastman Kodak Company, the certificates thereof being designated by their numbers. It was provided that the trustee should hold the stock in escrow until the absolute divorce was granted or until six months had elapsed, whichever occurred first, and during such period pay all cash dividends on the stock to the grantor and " Any and all stock, rights, bonds, warrants, evidences of indebtedness and other property issued by the Eastman Kodak Company upon said Eight Thousand shares of stock and received by the said Escrow Agent during the aforesaid period shall be retained by it and disposed along with the aforesaid stock certificates delivered herewith, as hereinafter provided."

If no divorce decree were granted within such six months, all of the stock and increments as just above quoted were to be turned over to the grantor; but if such a decree was granted, all of such property was to be transferred by the trustee bank as escrow agent to itself as trustee under such trust agreement, and be known as the " The Corpus of the Trust Fund."

The trustee was directed to hold " The Corpus of the Trust Fund " " to receive and collect the income, receipt and benefits derived therefrom including all stock, stock rights, bonds, warrants, evidences of indebtedness and other property issued by the said Eastman Kodak Company upon said ' Corpus of the Trust Fund ' and after deducting all lawful charges and expenses as hereinafter provided, in connection therewith, to pay over all aforesaid receipts quarter-annually to the Wife for her support and maintenance during her lifetime or until she shall remarry, whichever shall occur sooner. * * * Upon the

death or remarriage of the Wife, whichever shall occur sooner, this Trust shall cease and terminate, and the entire ' Corpus of the Trust Fund ' shall be paid over to the President and Trustees of Williams College, Williamstown, Massachusetts, to the sole use of the said College forever. It is the intent of the parties that all receipts as above defined, upon said ' Corpus of the Trust Fund,' the issuance or payment of which has accrued during the life of the Wife or prior to her remarriage, shall be delivered and transferred by said Trustee absolutely to the Wife for her own use forever and on termination of the Trust only said ' Corpus of the Trust Fund ' shall be paid over to said President and Trustees of Williams College.''

Within a few days after the execution of said agreements a decree of absolute divorce of Halford R. Clark and Lucy F. Squire Clark was granted, and the bank, as escrow agent, transferred to itself as trustee the 8,000 shares of Kodak stock, no additional receipts thereon having been received at that time.

On February 17, 1959, Eastman Kodak Company adopted the following resolutions:

'' RESOLVED: That a stock distribution of 19,191,123 shares of Common Stock be, and the same hereby is declared payable on the issued and outstanding common stock of this company April 13, 1959, to holders of shares of common stock of record at the close of business on March 9, 1959, in the ratio of one share of common stock for each share of common stock so held of record including shares in the company's treasury; and that at the close of business on such record day such shares of common stock shall be deemed to be issued and outstanding full-paid and non-assessable to be evidenced by certificates to be issued and delivered as hereinafter provided; and further

'' RESOLVED: That the proper officers of the Company be and they hereby are authorized, empowered and directed in the accounts of this Company to charge capital surplus with the sum of $191,911,230, to transfer and dedicate the same to the common stock capital account and to increase the common stock capital account by such sum, representing the par value of $10 per share of the additional shares of Common Stock so issued.''

In April, 1959 pursuant to the above resolutions, respondent trustee received 8,000 additional shares of Eastman Kodak Company common stock. It determined that under the trust instrument this new stock belonged to Lucy F. Squire Clark, the life beneficiary, and delivered it to her.

In September, 1960, the grantor, Halford R. Clark, died. Approximately a year later petitioner, Williams College, instituted this proceeding.

238

Petitioner contends that the trust instrument is not ambiguous and that it does not authorize the trustee to deliver to the life beneficiary stock which the trustee might receive on the trust corpus as the result of a stock split. It urges that the trustee's interpretation of the trust instrument is incorrect in that it would put the trust corpus at the mercy of a corporate board of directors who might, for policy reasons, make a stock split, even ten for one as was done by Eastman Kodak Company in 1922, of its capital stock; and they could do it even though no additional assets had been accumulated by the corporation from the time of its original capitalization, and hence by such extraneous action, the trust corpus would be seriously depleted. It concedes that the trust instrument could be so worded as to authorize even such additional stock to be paid to the life beneficiary; but it argues that since the effect of such construction would be so destructive of the trust corpus, the instrument may not be so interpreted unless it clearly and unequivocally expresses such intent.

The trustee and the life beneficiary have answered that in their opinion the trust instrument on its face clearly expresses the grantor's intention that the stock issue in dispute should be paid to the life beneficiary. They further claim that if it is not found to express such intent, then it is ambiguous and evidence of what the parties meant, as revealed through correspondence and testimony of their negotiations leading up to the agreements, should be received. Respondent life beneficiary asks, in that event, that the trust instrument be reformed to provide beyond equivocation that stock which, by reason of a stock split, past and future, is received upon the trust corpus is payable to the life beneficiary during her life, unless and until she remarries.

We start consideration of this problem by recognizing that the stock issue of 1959 was a stock split and that the 8,000 shares received by the trustee constituted principal of this trust (*Matter of Carlson*, 16 A D 2d 28, 32–33; *Matter of Clark*, 25 Misc 2d 506), and that changing the number of shares of capital stock in a trust fund by a stock split, in and of itself in no way alters the value of the trust fund. (See *Matter of Muller*, 14 A D 2d 439, 442; *Matter of Horrmann*, 3 A D 2d 5.) And we also recognize the principle that the grantor, if he chooses, may direct that part of the trust corpus be paid to the income beneficiary. In *Matter of Lloyd* (292 N. Y. 280, 285) the court said: " 'If', wrote the Surrogate, ' a dividend arising from such procedure is not to be put into capital account of the

Trust it is evident that the Trust principal can be appropriated to income completely.' But a testator may have it that way if he wishes it. A testamentary trust provision is not invalid merely because it results in the payment to ' income beneficiaries ' of part of the corpus. (*Matter of Osborne,* 209 N. Y. 450, 474.) The freezing of trust principal, so as to keep its original or ' intact ' value undiminished, is a matter of choice for the trustor. His expressed choice settles the question." The same principle was applied by GOLDMAN, J. in *Matter of Thoms* (3 Misc 2d 784) and by COLLINS, S. in *Matter of Lawrie* (119 N. Y. S. 2d 906, 912–913) and, see, *Matter of Fosdick* (4 N Y 2d 646, 655).

Our first question is, therefore, did the grantor unequivocally empower the trustee to turn over to the life beneficiary shares of stock distributed on a stock split, such as the 8,000 shares of Kodak stock received on the 1959 stock split? As quoted above, in paragraph 9 of the separation agreement the grantor directed that the trustee deliver to the life beneficiary " all stock, bonds, rights, warrants, evidences of indebtedness and other property issued by the Eastman Kodak Company " in addition to or in lieu of cash income " upon the ' Corpus of the Trust Fund ' (as defined in Exhibit 'A ') ". In paragraph D of subdivision 1 of said Exhibit " A " (the trust agreement) the grantor directed the trustee to hold the corpus and " receive and collect the income, receipts and profits derived therefrom including all stock, stock rights, bonds, warrants, evidences of indebtedness and other property issued by the said Eastman Kodak Company upon said ' Corpus of the Trust Fund ' " and pay it to the wife, the life beneficiary. The language used to describe what asset additions should be paid to the life beneficiary was the same as that used in paragraph " B " of the trust agreement concerning asset additions, if any, during the escrow period of the agreement. If the language does not include stock splits, then there was a failure to include such possible additions in the corpus of the fund as and when the trust should become effective, although income additions and certain principal additions were included, and it is apparent that additions of any kind, except cash, were meant.

The words used by the grantor, to wit, all stock, stock rights, bonds, warrants and other property issued by said Eastman Kodak Company upon said corpus are broad and encompass principal of any kind issued by the corporation on the " corpus ". It is true that the grantor did not specify stock received on a stock split, but neither did he limit it to stock dividends. Thus

the new stock belongs to the life beneficiary. Although this broad interpretation subjects the corpus of the trust to the action of the Board of Directors of Eastman Kodak Company, the interests of the latter are so manifold that clearly they would not be revising their capital stock structure to affect the rights of beneficiaries of this trust. Beyond that, however, the grantor did use this broad language. In order to cut down its scope the court would need to construe it in the light of the dire loss of principal which might occur in the event of stock splits, and from such fact draw a policy conclusion as to the grantor's probable intention as a matter of law. In view of the broad language used, the court may not limit its scope. Moreover, the grantor drafted the trust instrument in a transaction in which he obtained his wife's release of all interests in his estate. The broad language used should be interpreted as it would normally be read, in the absence of a showing that the parties meant something else.

Respondents agree with the foregoing, but they also contend that the negotiations leading up to the agreements show that the grantor meant an all-inclusive interpretation to be placed upon the words in question. They offered evidence to clarify any ambiguity that may exist in the agreements. The evidence was taken by the court to enable the parties to make a record; and much of it was presented over petitioner's objection, with the understanding that the court would rule thereon when rendering this opinion. Although I have interpreted the agreements, insofar as pertinent here, without reference to extrinsic evidence, I think it helpful for a thorough understanding and correct disposition of the case that the evidence be received, subject to appropriate evidentiary rulings.

Exhibits 5 and 10 were received without objection.

The evidence by Mr. Wood, general counsel to the trustee, on pages 24 through 26 of the minutes of the hearing is excluded as merely constituting a legal opinion concerning a matter which the court must decide. It undoubtedly supports the trustee by showing that it acted in good faith and with reasonable care, but such matters are not in issue herein. Exhibits 1, 2, 3 and 4 are excluded for the same reason.

Exhibits 6, 7, 8, 9 and 11 are received, as is the testimony of Mr. Dutcher in support thereof and concerning his negotiations with Mr. Sheehy in behalf of Mr. Halford R. Clark, except as excluded on the hearing.

Exhibits 12 and 13 are excluded.

Exhibits 14, 15 and 16 were offered in behalf of petitioner only if Exhibit 13 were received. Since Exhibit 13 is excluded, so

also are Exhibits 14, 15 and 16. Although Exhibit 16 was also offered by respondent, Lucy F. Squire Clark, it is of no help in interpreting Exhibit 10, and her offer is denied.

Mr. Sheehy's testimony as to what he told Mr. Dutcher concerning respondent Lucy Squire Clark's demands and what the agreements must contain is received.

The evidence of the negotiations leading up to the execution of the separation agreement and the trust agreement (Exhibit 10) shows that the wife was demanding that any asset, expressly including stock splits, to be derived from, through or upon the original 8,000 shares of Kodak stock in the trust corpus must be payable to her as life beneficiary. The parties and their attorneys openly discussed possible stock splits as well as other forms of corporate investment benefits, and pointedly refrained from using limiting words such as " stock dividends " or " stock splits.", but said " all stock ". The evidence further shows that although the husband, the grantor, resisted inclusion of stock splits for the wife, especially because of the tax consequences to him, he did accede to the demand, and that he intended and his wife intended at the time of the execution of said agreements that the wife as life beneficiary should have all stock distributions or changes, including stock splits. The evidence fortifies the court's construction of the trust agreement and confirms that the trustee has correctly interpreted such instrument.

In view of this decision there is no need for reformation of the instrument in question, and the demand therefor in the amended answer of the life beneficiary is denied.

Since petitioner asks only that the court determine that the trustee has misinterpreted the trust instrument and that the trustee be required to restore to the trust corpus the 8,000 shares of Kodak stock received in 1959, the petition is dismissed.